IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| UNITED CENTRAL INDUSTRIAL SUPPLY COMPANY, L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> JEFFREY HOOPS and ANDREW KESLER, <br><br> Defendants. | **DEMAND FOR JURY TRIAL** <br><br> Civil Action No.: 3:20-cv-00671 |

**COMPLAINT**

Plaintiff, United Central Industrial Supply Company, L.L.C. ("UCI"), by counsel, states as follows as its Complaint against Defendants Jeffrey Hoops ("Hoops") and Andrew Kesler ("Kesler") (collectively "Defendants"):

**NATURE OF THE ACTION**

1. This is a civil action alleging various misrepresentations made by the Defendants to UCI to induce UCI to provide credit to, and to continue selling mining supplies on credit to, the Defendants' former employer, Blackjewel, LLC and certain of its affiliates.

2. Upon information and belief Hoops controlled Blackjewel, LLC and multiple other entities engaged in aspects of the coal mining and coal sales businesses, including but not limited to Blackjewel Holdings L.L.C.; Revelation Energy Holdings, LLC; Revelation Management Corporation; Revelation Energy, LLC; Dominion Coal Corporation; Harold Keene Coal Co. LLC; Vansant Coal Corporation; Lone Mountain Processing, LLC; Powell Mountain Energy, LLC; and Cumberland River Coal LLC, (hereinafter, collectively, "Blackjewel Entities").

3. Under Hoops' control and as presented to UCI by Hoops, the Blackjewel Entities were operated in a coordinated manner, sharing assets and administrative services, incurring debts

and operating with combined financial statements under the common tradename *Blackjewel* (hereafter, as the commonly managed enterprise with which UCI did business, "Blackjewel").

4. The misrepresentations made by the Defendants involved the financial condition and operations of Blackjewel, and UCI reasonably relied on the Defendants' misrepresentation as detailed herein.

5. The Defendants' conduct has caused extensive monetary damages to UCI, in an amount to be proven at trial, well in excess of $75,000.00.

6. Because of their personal involvement and positions with Blackjewel and the Blackjewel Entities, the Defendants benefitted personally from the misrepresentations made to UCI.

**THE PARTIES**

7. Plaintiff UCI is a distributor of supplies and equipment for the domestic coal mining industry and is a wholly owned subsidiary of The United Distribution Group, Inc. ("UDG"), a Delaware corporation having its principal place of business in Bristol, Tennessee.  UDG is therefore a citizen of Delaware and Tennessee.  As UDG is the sole member of UCI, UCI is also considered to be a citizen of both Delaware and Tennessee.

8. Defendant Hoops is a natural person who, on information and belief, resides in West Virginia.  Hoops has been involved in the coal industry since the mid-1970s.  He was the President and CEO of Revelation Energy, LLC ("Revelation"), a surface coal mining company, prior to 2017.

9. Hoops became CEO of Blackjewel, LLC, a coal mining and holding company that, along with certain affiliates, filed for Chapter 11 bankruptcy protection on or about July 1, 2019 and July 24, 2019, in the United States Bankruptcy Court for the Southern District of West Virginia

(collectively the "Bankruptcy Cases").

10. The Bankruptcy Cases remain pending and are jointly administered under Case No. 19-BK-30289. UCI is asserting the claims pled herein against the Defendants on the basis that those claims arise from particularized harm caused to UCI alone by actions of the Defendants and are not claims common to the general body of creditors in the Bankruptcy Cases. The claims raised herein, therefore, are not property of the debtors' bankruptcy estates. UCI has no intention to interfere with, exercise any control over or otherwise implicate the automatic stay of 11 U.S.C. § 362 with regard to claims and causes of action against Hoops and/or Kessler that may be the property of the debtors' bankruptcy estates.

11. The headquarters for each of the Blackjewel Entities is located at 1051 Main Street, Milton, West Virginia 25541-1215

12. Based upon the declaration of Hoops filed in the Bankruptcy Cases, Hoops was the President and CEO of Blackjewel, LLC; Blackjewel Holdings L.L.C.; Revelation Energy Holdings, LLC; Revelation Management Corporation; and Revelation Energy, LLC and was an officer and/or director of the remaining Blackjewel Entities.

13. Upon information and belief and based on allegations made by the Debtors in the Bankruptcy Cases, Hoops and certain family members and affiliates invested in and engaged in substantial business transactions with the Blackjewel Entities.

14. Defendant Kesler is a natural person who, on information and belief, resides in West Virginia. Kesler was the CFO of the Blackjewel Entities.

15. Based on their involvement and positions with Blackjewel and the Blackjewel Entities, Hoops and Kesler had actual knowledge about the financial condition and operations of Blackjewel and the Blackjewel Entities at all relevant times in this Complaint and were responsible

for maintaining all of their financial records and reporting.

16. Hoops and Kesler represented to UCI that they had actual knowledge about the financial condition and operations of Blackjewel.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and there is complete diversity between the Plaintiff and the Defendants.

18. This Court has personal jurisdiction over the Defendants because they reside in West Virginia.

19. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because, *inter alia*, the Defendants reside in this district.

## FACTS

20. Revelation, of which Hoops was the President and CEO, conducted coal mining operations.

21. UCI entered into a Payment Terms Agreement (the "PT Agreement") with Revelation on or about August 6, 2015. The PT Agreement provided the terms by which Revelation would pay for mining supplies purchased from UCI, including, *inter alia*, a total aggregate credit limit for Revelation of $300,000.00.

22. Hoops signed the PT Agreement on behalf of Revelation, and Henry Looney, President of UCI, signed it on behalf of UCI.

23. On information and belief, Blackjewel, LLC was formed in March of 2017 for the purpose of assisting in the acquisition and revitalization of struggling assets from existing coal mining operations.

24. On information and belief, Hoops was the CEO of Blackjewel, LLC from its inception.

25. In April of 2017, Blackjewel retained Jefferies Group LLC ("Jefferies"), an investment bank, to assist it in obtaining debt financing in order to provide working capital and fund certain acquisitions that Blackjewel sought to conduct.

26. On or about July 17, 2017, Blackjewel closed on a $34 million term-loan facility with Riverstone Credit Partners ("Riverstone"), which carried a 15% annual interest rate. Upon information and belief, of that $34 million, Hoops personally provided $3 million.

27. In July of 2017, Blackjewel acquired control of certain of Revelation's coal mining operations (the "2017 Revelation Transaction").

28. During the remaining portion of 2017 and thereafter, Blackjewel acquired assets, including actual operating mine complexes, from several other entities.

29. In order to obtain supplies and equipment to operate its mining operations, Blackjewel, through Hoops, sought to purchase mining supplies for all of its operations and to increase the credit limit that had been in place between UCI and Revelation pursuant to the PT Agreement.

*The Model*

30. In order to evaluate Hoops' request for sales to and an increased credit limit for Blackjewel, UCI requested certain financial information from Hoops about Blackjewel.

31. In August of 2017, in response to UCI's request for financial information in order to evaluate the request for sales and an increased credit limit, Hoops provided UCI, via email, with a document entitled "Blackjewel Operating Model," (together with the accompanying correspondence, the "Model") which was purportedly prepared by Jeffries and also purported to

contain, among other information, historical balance sheets and income statements from January through May of 2017.

32. The Model also included forecasted results of Blackjewel's operations beginning in June of 2017; however, by the time Hoops provided the Model to UCI in August 2017, Blackjewel and Hoops had the actual performance results for Blackjewel for the months of June and July 2017, which were materially different from the information presented in the Model.

33. At the time that the Model was presented to UCI, the Defendants knew Blackjewel's actual financial performance through July 2017 and for part of August 2017.

34. The Model contained material false representations, including material false representations concerning the historical operations of mines owned by Blackjewel and the financial condition of Blackjewel, including assets and liabilities, as of August of 2017, overstating historical sales volumes and revenue per ton sold and understating historical production costs and liabilities, including accounts payable, accrued expenses, reclamation obligations, and override liability.

35. Specifically, the Model:

a. Overstated by material amounts the number of tons sold in July 2017 versus the number of tons that had actually been sold in July 2017.

b. Overstated by material amounts the revenue per ton for July 2017 versus actual revenue per ton received for July 2017.

c. Contained material misstatements of projected Quarter Three gross profit based on the actual gross profit of the portion of Quarter Three known at the time the Model was provided to UCI.

d. Understated reclamation liabilities by multiple tens of millions of dollars.

      e.      Failed to disclose liabilities to creditors in the multiple tens of millions of dollars.

36. On information and belief, Hoops knew that the Model both contained false information at the time that he delivered it to UCI and made projections of future revenue that were premised and based on false information.

37. As the CFO of the Blackjewel Entities, upon information and belief, Kesler was responsible for and participated in preparation of the Model. Hoops, as the CEO, officer and/or director of the Blackjewel Entities, knew or should have known that the information provided in the Model was grossly inaccurate and materially false.

38. In providing false historical financial information to UCI and the projected revenue based on false information, whether he knew it was materially false or should have known that it was materially false, Hoops knew and intended that UCI would rely on the false information in continuing to make sales on credit to Blackjewel and in allowing an increase of Blackjewel's credit limit with UCI.

39. UCI neither knew nor had reason to know that the information provided by Hoops was false at the time that he delivered the Model to UCI in August of 2017. UCI also reasonably believed the information in the Model to be true and had no reason to suspect or any ability to know that the information was false.

40. By November of 2017, in reasonable reliance on the false information provided by Hoops, including in the Model, UCI had increased the credit limit available to Blackjewel for the purpose of acquiring goods from UCI to approximately $6 million.

*The July 2018 Financials*

41. On October 9, 2018, Kesler provided UCI unaudited financial information for

7

Blackjewel through July 31, 2018 (together with the accompanying correspondence, the "July 2018 Financials").

42. The July 2018 Financials contained materially false information and representations concerning Blackjewel's financial condition and operations as of July 31, 2018.

43. Specifically, the July 2018 Financials:

    a. Materially overstated inventory values by multiple tens of millions of dollars.

    b. Materially overstated actual performance and results through improper accounting adjustments resulting in an incorrect purported profit in excess of fifteen million dollars.

    c. Falsely rationalized a material accounting restatement that, upon information and belief, was identified by Black Jewel Marketing and Sales' outside auditors.

    d. Upon information and belief, contained material misrepresentations about the amount of and reduction of long-term debt.

44. On information and belief, Hoops instructed Kesler to provide the July 2018 Financials to UCI.

45. Kesler and Hoops knew or should have known that the July 2018 Financials contained materially false information.

46. In providing July 2018 Financials to UCI, whether they knew them to be materially false or should have known them to be materially false, Hoops and Kesler knew and intended that UCI would rely on the false information contained in the July 2018 Financials in continuing to make sales on credit to Blackjewel and in allowing an increase of Blackjewel's credit limit with

UCI.

47. UCI neither knew nor had reason to know that the information provided by Hoops and Kesler was false at the time that they delivered the July 2018 Financials. UCI also reasonably believed the information in the July 2018 Financials to be true and had no reason to suspect or any ability to know that the information provided by Hoops and Kesler was false.

48. In reasonable reliance on the July 2018 Financials, UCI continued to make sales to Blackjewel on credit and allowed the credit limit on Blackjewel's purchases to increase.

*The November 2018 Financials*

49. On March 3, 2019, Kesler provided UCI with unaudited financial information for Blackjewel through November 28, 2018 (together with the accompanying correspondence, the "November 2018 Financials").

50. The November 2018 Financials contained materially false representations, including materially false representations concerning Blackjewel's financial condition and operations as of November 28, 2018.

51. Specifically, the November 2018 Financials:

   a. Carried over from the July 2018 Financials the overstatement of inventory values.

   b. Falsely and improperly reported Capital Expenditures by an amount in excess of $10 million.

52. On information and belief, Hoops instructed Kesler to provide the November 2018 Financials to UCI.

53. Kesler and Hoops knew or should have known that the November 2018 Financials contained materially false representations and information.

9

54. In providing the November 2018 Financials to UCI, whether they knew them to be materially false or should have known them to be materially false, Hoops and Kesler knew and intended that UCI would rely on the false information contained in the November 2018 Financials in continuing to make sales on credit to Blackjewel and in allowing an increase of Blackjewel's credit limit with UCI.

55. UCI neither knew nor had reason to know that the information provided by Hoops and Kesler was false at the time that they delivered the November 2018 Financials. UCI also reasonably believed the information in the November 2018 Financials to be true and had no reason to suspect nor any ability to know that the information provided by Hoops and Kesler was false.

56. In reasonable reliance on the November 2018 Financials, UCI continued to make sales to Blackjewel on credit and allowed the credit limit on Blackjewel's purchases to increase.

*The Verbal Representations*

57. From 2016 through May or June of 2019, Hoops and Kesler made verbal representations to UCI during the course of telephone calls and in-person meetings concerning the financial condition, current operations and status of Blackjewel (the "Verbal Misrepresentations" and, together with the Model, the July 2018 Financials, and the November 2018 Financials the "Representations").

58. The Verbal Misrepresentations contained materially false representations and information, including materially false representations concerning Blackjewel's financial condition, current operations and status, as of the time each Verbal Misrepresentation was made.

59. Specifically, in the Verbal Misrepresentations Hoops and Kesler made false representations regarding:

    a. The ability to make payments to UCI in excess of the amount of products

       purchased per week from UCI.

    b.    The status of coal to be shipped and sold.

    c.    The status of payments that were being sent to UCI.

    d.    The progress of Blackjewel in improving its production of coal.

    e.    The payment of money to UCI.

    f.    The accuracy of the Model, the July 2018 Financials and the November 2018 Financials.

60. On information and belief, Hoops instructed Kesler to provide certain of the Verbal Misrepresentations to UCI.

61. The Verbal Misrepresentations were made via telephone and during in person meetings, including but not limited to a meeting among Henry Looney and David Sacher on behalf of UCI and Hoops and Kesler on behalf of Blackjewel, that occurred on November 14, 2018.

62. Kesler and Hoops knew or should have known that the Verbal Misrepresentations contained materially false representations and information.

63. In providing Verbal Misrepresentations to UCI, whether they knew them to be materially false or should have known them to be materially false, Hoops and Kesler knew and intended that UCI would rely on the false information contained in the Verbal Misrepresentations in continuing to make sales on credit to Blackjewel and in allowing an increase of Blackjewel's credit limit with UCI.

64. UCI neither knew nor had reason to know that the information provided by Hoops and Kesler was false at the time that they made the Verbal Misrepresentations. UCI also reasonably believed the information in the Verbal Representations to be true and had no reason to suspect nor any ability to know that the information provided by Hoops and Kesler was false.

65. By the time that the Blackjewel Entities filed their bankruptcy petitions on July 1, 2019 and July 24, 2019, the amount owed to UCI by Blackjewel had increased to over $9 million.

66. UCI sold mining supplies to Blackjewel in multiple states including West Virginia, Virginia, Kentucky and Wyoming.

67. On information and belief, Hoops had a pecuniary interest in Blackjewel's success in part because he personally provided $3 million towards a $34 million credit facility provided by Riverstone and because of other investments in Blackjewel and the Blackjewel Entities at other times. Additionally, Blackjewel as debtor-in-possession has filed suits against certain affiliates of Hoops to recover money or assets alleged to have been wrongfully or fraudulently transferred to those affiliates of Hoops. To the extent that the facts alleged in the suits against the affiliates of Hoops are accurate, they further reflect Hoops' pecuniary interest in continuing the operations of Blackjewel and the Blackjewel Entities.

68. As CFO, Kesler had a pecuniary interest in the continued operations of the Blackjewel Entities.

69. In reasonable reliance on the Verbal Misrepresentations, UCI continued to make sales to Blackjewel on credit and allowed the credit limit on Blackjewel's purchases to increase.

70. By providing UCI with information for UCI to evaluate in connection with granting credit to Blackjewel, the Defendants had a duty to provide accurate financial information to UCI.

71. The Representations comprise a continuing pattern of representations containing materially false information that was conveyed by the Defendants to UCI as part of the Defendants' efforts and scheme to have UCI increase the amount of credit to and continue to provide sales to Blackjewel on credit so Blackjewel could continue to operate to the benefit of the Defendants. Through the Representations, the Defendants intended to mislead and deceive UCI into continuing

to make sales on credit to Blackjewel and in allowing increases of Blackjewel's credit limit with UCI.

72. Upon information and belief, at relevant times when the Representations were made to UCI, Blackjewel and the Blackjewel Entities were insolvent.

73. UCI has been damaged by the Defendants' knowing and intentional conduct in providing false information to UCI with the intention that UCI rely on that information and UCI's reliance on that false information.

## Count I - Actual Fraud

74. UCI reasserts the foregoing paragraphs 1 through 73 as though fully restated herein.

75. Defendants made material false representations related to the financial condition and operations of Blackjewel by providing UCI with the false information contained in the Representations.

76. The false information constituted material facts about Blackjewel's financial condition and operations at the time that the information was submitted to UCI.

77. The Representations were made intentionally and knowingly by the Defendants and the Defendants knew that the information being submitted to UCI was false at the time it was made to UCI. The Defendants submitted the information to UCI with the intention that UCI rely on it in making credit determinations for Blackjewel's ability to purchase supplies on credit from UCI and the amount of Blackjewel's credit limit.

78. UCI did in fact reasonably rely on the false information provided by the Defendants in allowing significant sales and increases to the credit limit for Blackjewel's purchases of supplies from UCI.

79. UCI was justified to rely on the Representations and the false information provided

by the Defendants.

80. But for the false information provided by the Defendants and UCI's reliance thereon, UCI would not have increased the credit line available to Blackjewel or continued to make sales to Blackjewel on credit.

81. UCI has been damaged by the Defendants' conduct, in an amount to be determined at trial, but believed to be approximately $9,113,118.60.

## Count II - Constructive Fraud
### (In the alternative to Count I)

82. UCI reasserts the foregoing paragraphs 1 through 81 as though fully restated herein.

83. Defendants misrepresented the financial condition and operations of Blackjewel by providing UCI with false information contained in the Representations.

84. The information that was falsified constituted material facts about Blackjewel's financial condition and operations at the time that the information was submitted to UCI.

85. If the Defendants did not know that the information was false, then they should have known that it was false due to their positions with Blackjewel and the Blackjewel Entities.

86. The Defendants submitted the information to UCI with the intention that UCI rely on it in making credit determinations for Blackjewel's ability to purchase supplies on credit from UCI and the amount of Blackjewel's credit limit.

87. UCI did in fact justifiably rely on the false information provided by the Defendants in allowing purchases on credit and granting significant increases to the credit limit for Blackjewel's purchases of supplies from UCI.

88. The Defendants gained an advantage at the expense of UCI through the Defendants' actions.

89. Based on the false information provided by the Defendants and UCI's reliance on

it, UCI has been damaged by the Defendants' conduct, in an amount to be determined at trial, but believed to be approximately $9,113,118.60.

### **Count III - Negligent Misrepresentation**

90. UCI reasserts the foregoing paragraphs 1 through 89 as though fully restated herein.

91. In the alternative, if the Defendants did not have knowledge of the truth or lack of truth of the Representations, the Defendants represented to UCI that the information contained in the Representations was true.

92. The information in the Representations was false and constituted material facts about Blackjewel's financial condition and operations at the time that the information was submitted to UCI.

93. Defendants provided this false information to UCI with the intention that UCI rely on it in making credit determinations for Blackjewel.

94. Defendants made these false representations to UCI in furtherance of their own pecuniary interest.

95. In supplying the information to UCI to obtain an increased credit line and have UCI continue to sell to Blackjewel on credit, Defendants had a duty to exercise reasonable care in communicating the information to UCI. Defendants failed to uphold this duty.

96. UCI reasonably and justifiably relied on the false information provided by Defendants, and UCI suffered pecuniary loss as a result.

97. Based on the false information provided by the Defendants and UCI's reliance on it, UCI has been damaged by the Defendants' conduct, in an amount to be determined at trial, but believed to be approximately $9,113,118.60.

## PRAYER FOR DAMAGES AND OTHER RELIEF

Plaintiff United Central Industrial Supply Company, L.L.C. seeks all available damages and other relief against Defendants to which Plaintiff is entitled, including but not limited to:

A. Entry of judgment and an award of damages in favor of United Central Industrial Supply Company, L.L.C. and against Defendants on Count I plus pre-judgment and post-judgment interest as allowed by law;

B. Entry of judgment and an award of damages in favor of United Central Industrial Supply Company, L.L.C. and against Defendants on Count II plus pre-judgment and post-judgment interest as allowed by law;

C. Entry of judgment and an award of damages in favor of United Central Industrial Supply Company, L.L.C. and against Defendants on Count III plus pre-judgment and post-judgment interest as allowed by law;

D. Punitive damages in an amount to be determined at trial; and

E. Such other relief to which United Central Industrial Supply Company, L.L.C. is entitled and any additional relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiff demands a trial by jury on all issues triable of right by a jury in this case.

October 9, 2020   Respectfully submitted,

UNITED CENTRAL INDUSTRIAL SUPPLY COMPANY, L.L.C.

By Counsel

/s/ Carrie Goodwin Fenwick
Carrie Goodwin Fenwick, Esquire (WV Bar No. 7164)
Goodwin & Goodwin, LLP
P.O. Box 2107
Charleston, WV 25328-2107
Telephone: (304) 346-7000
Email: cgf@goodwingoodwin.com